# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John Doe 1, and Jane Doe 1, in their own capacity and as parent of Child Doe1, et al.

**DEFENDANTS**

Perkiomen Valley School District, a Pennsylvania governmental entity, et al.

**(b)** County of Residence of First Listed Plaintiff      Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant      Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Carmen A. De Gisi, De Gisi Law Group, LLC, 462 Germantown Pike, Suite 11, Lafayette Hill, PA 19428 (610) 897-8721

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sec 12101, et seq. and 29 USC Section 794

Brief description of cause:
Violations of the American Disability Act and Section 504 of the Rehabilitation Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
Preliminary Injunction

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*      JUDGE _____      DOCKET NUMBER _____

DATE _____      SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____  _____  _____

Must sign here

                            *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*  *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10.  Social Security Review Cases
☐ 11.  All other Federal Question Cases
        *(Please specify):* _____

*B.*  *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: _____  _____  _____

Sign here if applicable

                            *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE 1 and JANE DOE 1, in their own ) | |
| Capacity and as parents of CHILD DOE 1, ) | |
| JOHN DOE 2 and JANE DOE 2, in their own ) | |
| Capacity as parents of CHILD DOE 2, ) | |
| JANE DOE 3, in her own capacity and as parent of ) | Civil Action No.: |
| CHILD DOE 3 and on behalf of those similarly ) | |
| Situated, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| PERKIOMEN VALLEY SCHOOL DISTRICT, a ) | |
| Pennsylvania governmental entity, JASON ) | |
| SAYLOR, MATTHEW DORR, ROWAN ) | |
| KEENAN, DON FOUNTAIN, KIM MARES, ) | |
| REENA KOLAR, SARAH EVANS-BROCKETT, ) | JURY TRIAL DEMANDED |
| LAURA WHITE, and TAMMY CAMPLI, all ) | |
| Individual elected officials sued in their official ) | |
| capacity as members of the BOARD OF SCHOOL ) | |
| DIRECTORS OF THE PERKIOMEN ) | |
| VALLEY SCHOOL DISTRICT, a Pennsylvania ) | |
| elected legislative body, ) | |
| ) | |
| Defendants. ) | |

---

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION
504 OF THE REHABILITATION ACT**

---

Plaintiffs, school-age children attending school in Defendant Perkiomen Valley School District that suffer from disabilities which render them medically vulnerable to COVID-19, by and through their parents, bring this action for declaratory and injunctive relief on behalf of themselves and a class of similarly situated disabled children who are at severe risk of illness and injury due to their disabilities and allege as follows:

1

## INTRODUCTION

1.      Despite a clear understanding of the necessity and importance of in-person education and protecting the mental and physical health and lives of children, the Board of School Directors of the Perkiomen Valley School District ("School Board"),  one December 13, 2021, by a 5-4 vote, voted to reverse the Health and Safety Plan of the District requiring universal masking so long as the transmission rate of COVID-19 in Montgomery County was in the "Substantial" or High" categories, and instead, as of January 21, 2022, will arbitrarily permit optional masking in the District regardless of transmission rate of infection.[1]

2.      All authorities, as well as Defendants, agree that in-person instruction is necessary for the mental well-being of all children.  *See,* Guidance for COVID-19 Prevention in K-12 Schools, Updated Jan. 6, 2022 ("Students benefit from in-person learning, and safely returning to in-person instruction continues to be a priority.").[2]

3.      Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[3]

---

[1] On January 2, 2022, Defendants Tammy Campli, Matthew Dorr, Sarah Evans-Brockett, Don Fountain, Reena Kolar, Kim Mares, and Laura R White voted in favor of an emergency amendment extending the universal mask mandate until January 21, 2022.  Defendant Rowan Keenan voted against the measure in protest that it did not rescind the universal masking policy immediately.  Defendant Jason Saylor abstained from the vote.  The Board Member Defendants are only included to allow the Court to grant the relief requested herein; no aspersions as to their personal actions as Board Members are intended by this filing.

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html#:~:text=C DC%20recommends%20universal%20indoor%20masking,layered%20prevention%20strategies%20in%20place.

[3] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye bydirect splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

2

4.      Significantly, asymptomatic carriers of COVID-19 transmit the disease.  Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine.  Nevertheless, they are estimated to account for more than 50% of transmissions.[4]

5.      "It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19."[5]  The CDC explains that a "layered approach" to "reduce the spread of disease" from COVID-19 requires the concurrent use of multiple strategies, of which **"using masks consistently and correctly"** is necessary and has "proven effective."[6]

6.      As recently as January 4, 2022, the CDC reinforced the need for continued application of a "layered approach" to prevention of the spread of COVID-19, requiring universal masking while indoors, stating: "Mask use and layered prevention strategies, such as receiving all recommended vaccination and booster doses, physical distancing, screening testing, and improved ventilation, are key to preventing COVID-19 and decreasing transmission."[7]

7.      In order to keep children in-school, every step necessary to a "layered approach" for preventing the spread of COVID-19, which requires universal masking, should be followed.  *Id*.

8.      The current, most prevalent variant of COVID-19, known as the Omicron variant, is extremely infectious and is spread much more readily than either the original SARS-CoV-2 strain or the Delta Variant.  *See* CDC Omicron Variant: What You Need to Know, Updated Dec. 20,

---

[4]  Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

[5]  https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces.

[6]  https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2 .html (emphasis added).

[7]  https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine-isolation-background.html.

2021 ("The Omicron variant likely will spread more easily than the original SARS-CoV-2 virus and how easily Omicron spreads compared to Delta remains unknown. CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms.").[8]  Unmasked individuals are both at risk of immediate and irreparable harm from COVID-19, as well as can be the cause of a higher risk of spreading COVID-19 and resultant serious illness and/or death.  *Id.*

9.      Like the rest of Pennsylvania, Montgomery County has suffered from the spread of COVID-19.  Beginning in August of 2021, and through the date of this filing, Montgomery County has been continuously in the high infection rate.  *See* Exhibit 1, CDC COVID Data Tracker dated 1/10/2022.

10.      The Board's vote neither accounts for the fact that transmission rate of infection from COVID-19 was still in the "High" category on January 2, 2022 and that it continues to dramatically increase because of Omicron, nor that universal masking is essential to the prevention of the spread of this airborne disease.  *See* Exhibit 1.

11.      According to the Special Education Data Report for 2020-2021 school year, disabled students designated as "Other Health Impairment" comprise 20.3% of the 5,319 students in the District, or 1,080 students.  *See* Exhibit 2, Special Education Data Report for 2020-2021 for Perkiomen Valley School District, published June 2021 by the Pennsylvania State Data Center.

12.      The Board's vote fails to account for the fact that there are as many as 1,080 children in the school district who are medically fragile disabled students who require the protection afforded by universal masking to reduce the risk of spread of COVID-19 and to enable them to have access to

---

[8] https://www.cdc.gov/ coronavirus/2019-ncov/variants/omicron-variant.html.

the school buildings for in-person instruction.

13.    The Board's vote permitting optional masking forces the parents of medically fragile school children with disabilities to make the shockingly unfair or unjust decision of deciding whether to pull their children out of in-person learning, causing mental harm and havoc on the child and family, or face the quantifiably increased risk of physical harm caused by exposure to severe illness or death as a result of COVID-19.

14.    Since August of 2021 and through the present, due to the high transmission rate of infection from COVID-19 in Montgomery County, the CDC, the Pennsylvania Department of Health, (PADOH), and the Montgomery County Office of Public Health (OPH) have all recommended that school children should universally mask while in school buildings.  *See* Exhibit 1, CDC COVID DataTracker dated 1/10/2022, p. 2. ("Everyone in Montgomery County should wear a mask in public, indoor settings.")

15.    Further, the American Academy of Pediatrics (AAP) and Children's Hospital of Philadelphia both recommend universal masking in schools.[9]

16.    The Perkiomen Valley School Board Policy Manual requires that Board "procedures and policies shall be consistent of law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed toward the maintenance and support of a thorough and efficient system of public education in this District." *See* Board Policy, Section 000, Code 002,

---

[9]https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/ at COVID-19 Guidance for Safe Schools and Promotion of In-Person Learning dated November 17, 2021 (Purposes and Key Principles: All students older than 2 years and all school staff should wear face masks at school (unless medical or developmental conditions prohibit use), regardless of vaccination status); https://policylab.chop.edu/tools-and-memos/guidance-person-education-k-12-educational-settings#:~:text=With%20evidence%20that%20COVID%2D19,of%20significant%20community%20transmission%2C%20 and at Guidance for In-person Education in K-12 Educational Settings dated January 2022 at pg. 1 (1. Continue indoor masking requirements within buildings and at school activities, regardless of vaccination status.)

Powers.

17.     The Perkiomen Valley School Board Policy Manual requires the Board to protect the
health and safety of the students by minimizing the transmission of communicable diseases.  *See*
Perkiomen Valley School Board Policy Manual, Section 200 – Pupils, Immunizations and
Communicable Diseases, Code 203, Adopted March 14, 1994.

18.     Perkiomen Valley School Board Policy Manual Section 203 - IMMUNIZATIONS
AND COMMUNICABLE DISEASES sets forth, in pertinent part:

**Authority**.

In order to safeguard the school community from the spread of certain communicable
diseases, the Board requires that guidance and orders from state and local health officials,
established Board policy and administrative regulations, and Board-approved health and
safety plans be followed by students, parents/guardians and district staff.

*    *    *    *    *

**Communicable Diseases**

The Superintendent or designee shall direct that **health guidelines, Board-approved
health and safety plans, and universal precautions designed to minimize the
transmission of communicable diseases be implemented** in district schools.  [emphasis
added]

*    *    *    *    *

Instructions regarding communicable and life-threatening diseases shall be provided by
the schools in the educational program for all levels, in accordance with state regulations.
[Pa. Code] Title 22, Sec. 4.29 [emphasis added]

19.     The School Board's Policy Manual assigns the responsibility for the "safety of
students staff, visitors, and facilities" to the Board.  Specifically, in Policy Manual Section 800 -
Operations,Code 805, Adopted May 9, 1994, 805 – EMERGENCY PREPAREDNESS, requires
that the Board "**provide the facilities, equipment and training necessary to protect against**

**hazards and emergencies, including** but not limited to natural disasters, hazardous chemicals, fires, weapons, bomb threats, intruders, terrorism, **communicable diseases and pandemics**. [emphasis added].

20.     Public health concerns are a compelling governmental interest.  The Supreme Court has determined that the public health concern of "[s]temming the spread of COVID-19" qualifies as "a compelling interest" of the government. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U. S.___,___, 141 S. Ct. 63, at 67 (2020) (per curiam) (slip op., at 4) ("[s]temming the spread of COVID-19 is unquestionably a compelling interest."); *see also American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 261 (3d Cir.2003) ('ACLU II') ("Government's compelling interest in protecting minors.").

21.     Prior to the Board votes on December 13 and January 2, 2022, the Defendant Board recognized  the public health significance of COVID-19 and its impact on the District when it approved a Health and Safety Plan designed to help keep the children in school and protect the children's health and well-being while in school during the national pandemic caused by COVID-19. *See* Health and Safety Plan, version 7, Draft Published August 9, 2021 (the "Plan").

22.     The Plan stated that the School District PVSD "will continually monitor local/district and county incidence and percent positivity rates and the corresponding level of community transmission i.e., low, moderate, substantial or high COVID-19 pandemic status as identified by the Montgomery County Office of Public Health, MCOPH-2021-2022-School-Year-COVID-School-Guidance_July_29_2021, Pennsylvania Department of Health, and Pennsylvania Department of Education in the Level of Community Transmission Table.." *See* Health and Safety Plan, version 7, Draft Published August 9, 2021 at p. 1; *see also id.* at p. 5 ("PVSD will continually

review the most up to date guidance, recommendations, and mandates from the Centers for Disease Control (CDC), Montgomery County Office of Public Health (MCOPH), PA Department of Health (PADOH), and Pennsylvania Department of Education (PDE)..")

23.     Since stemming the spread of COVID-19 is a compelling governmental interest and the Board recognizes this fact, then the Board should be doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Montgomery County, as the Board is required to do.

24.      According to the Board Policy Manual, the School Board is "committed to providing every student the opportunity to grow and achieve.  The actions taken by the board ultimately have both short and long-term impact in the classroom.  Therefore, school directors collectively and individually will . . . Adhere to an established set of rules and procedures for board operations" and " Utilize appropriate data to make informed decisions." *See* Perkiomen Valley School Board Policy Manual, Section 000 – Principles for Governance and Leadership, Code 011, as Revised June 8, 2020.

25.     Reliable information from responsible sources is readily found from the CDC, PADOH, Montgomery County OPH, EPA, American Academy of Pediatrics (AAP), and Children's Hospital of Philadelphia, all of which agree that universal masking in schools is essential for preventing the spread of infection to children caused by COVID-19.

26.     Instead of following the reliable information from responsible sources and supporting the compelling governmental interest by doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Montgomery County, the Board voted on December 13, 2021 to arbitrarily and capriciously remove the protection

8

provided by universal masking from the District regardless of the rate of transmission in Montgomery County.

27.     In doing so, the School Board has put the parents of medically vulnerable students in the position of having to decide whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety.

28.     This brutal choice forces children into a situation that violates Section 504 and the ADA.

29.     The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities.

30.     Plaintiffs in this matter are students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19.

31.     Disabling, underlying medical conditions which occur in children have been identified by the Center of Disease Control (CDC) as risk factors for severe COVID-19 infection or death—with or without the vaccination, include a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders

(including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) genetic disorders; and/or (m) muscular dystrophy or spinal cord injury. Further, some of the Plaintiffs and the proposed Class are ineligible to receive the vaccine under the Food and Drug Administration regulations.

## JURISDICTION AND VENUE

32.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein.

33.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §§ 2201–2202.

34.     This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331.  Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. *See* 29 U.S.C. § 701, *et seq*. and 20 U.S.C. § 1681, *et seq*.

35.     There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court.

36.     Plaintiffs have no adequate remedy at law.

37.      Venue is proper before the United States District Court for the Eastern District of Pennsylvania, Philadelphia Division, under 28 U.S.C. §1391 because all parties reside or otherwise are found in this District, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

38.     The Court has personal jurisdiction over Defendants because they are: (a) a public school district head quartered in Montgomery County, Pennsylvania; (b) an elected legislative entity charged with directing the district; and (c) the individuals members of that legislative entity

in their official capacity.

## PARTIES

### I.     The Plaintiffs

39.     JOHN DOE 1 and JANE DOE 1 live in the School District and bring claims in their own capacity and as parents of CHILD DOE 1, who is a student in the Perkiomen Valley School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of themselves and those similarly situated.

40.     JOHN DOE 2 and JANE DOE 2 live in the School District and bring claims in their own capacity and as parents of CHILD DOE 2, who is a student in the Perkiomen Valley School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of themselves and those similarly situated

41.     JANE DOE 3 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 3, who is a student in in the Perkiomen Valley School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of herself and those similarly situated.

42.     The putative class of students whom Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 of the RA and should be shielded from discrimination by their school district.

### II.    The Defendants

43.     Defendant School District is a municipal organization charged with the education of K-12 students in the Perkiomen Valley School District of over five-thousand, three hundred (5,300) students.  Defendant School District is in the top 10% of the largest school districts in this

Commonwealth based on the number of students enrolled.

44.     Defendant School Board is made up of nine individual school directors residing and conducting business in Montgomery County, Pennsylvania.

45.     Defendant School Board is an elected school board residing and conducting business in Montgomery County, Pennsylvania.

46.     Upon information and belief, Defendant, Jason Saylor, is Board President, a Montgomery County resident and member of the School Board, sued here in his official capacity.

47.     Upon information and belief, Defendant, Kim Mares, is Board Vice-President, a Montgomery County resident and member of the School Board, sued here in her official capacity.

48.     Upon information and belief, Defendant, Tammy Campli, is a Montgomery County resident and member of the School Board, sued here in her official capacity.

49.     Upon information and belief, Defendant, Matthew Dorr, is a Montgomery County resident and member of the School Board, sued here in his official capacity.

50.     Upon information and belief, Defendant, Sarah Evans-Brockett, is a Montgomery County resident and member of the School Board, sued here in her official capacity.

51.     Upon information and belief, Defendant, Don Fountain, is a Montgomery County resident and member of the School Board, sued here in his official capacity.

52.     Upon information and belief, Defendant, Rowan Keenan, is a Montgomery County resident and member of the School Board, sued here in his official capacity.

53.     Upon information and belief, Defendant, Reena Kolar, is a Montgomery County resident and member of the School Board, sued here in her official capacity.

54.     Upon information and belief, Defendant, Laura White, is a Montgomery County

resident and member of the School Board, sued here in her official capacity.

55.     Defendant School District and School Board are "distinct legal entit[ies] with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities." Thus, they are a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104, and receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).

## FACTS

### III.     COVID-19 and its Delta Variant Spread Through the Breath of Others

56.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein

57.     COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

58.     Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[10]

59.     Asymptomatic carriers of COVID-19 can also transmit the disease.  Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine.  However, they are estimated to account for more than 50% of transmissions[11]

---

[10] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[11] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

60.     The current COVID-19 variant, known as the Omicron Variant, is extremely infectious and is spread much more readily than even the Delta Variant and the original SARS-CoV-2 strain.[12]

61.     There is no cure for COVID-19.  The vaccine has only recently been approved for children under 12 years old.  This means that children under 12 years old are only starting to have the ability or opportunity to become fully vaccinated.  The vaccine has been proven less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

62.     School-aged children with certain protected disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions.  According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[13]  And, as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[14]

63.     Upon information and belief, the schools located within the Perkiomen Valley School District regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and

---

[12] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[13] Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[14] *Id.*

weakened immune systems impacting a significant portion of the population.

64.      Defendant School District regularly serves students with these disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impacting a significant portion of the population.

**A.      The necessity of masking for safe access to school.**

65.      Preventing the spread of COVID-19 is accomplished through a layered approach, including wearing face masks, washing hands, cleaning surfaces, social distancing, and introducing new air filters to reduce the risk of COVID-19 transmission.[15]

66.      For school age children who are not yet fully vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing.  The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[16]

67.      "When teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[17]  The cloth layer blocks the droplets from releasing into the environment, along with the microorganisms these particles carry.  To be more specific, masks block

---

[15] See https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces ("It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19.")

[16] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06- esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8.

[17] Id.

the large droplets ("20-30 microns and up") as well as finer droplets.[18]

68.     The CDC,[19] the American Academy of Pediatrics,[20] the Pennsylvania Department of Health[21] and Montgomery County OPH, all recommend universal masking in  schools in an effort to reduce the risk of transmission of COVID-19.

69.     The Pennsylvania Department of Education also supports universal masking to reduce the risk of transmission of COVID-19.[22]

70.     Unmasked individuals are at risk of immediate and irreparable harm from COVID-19, as well as at a higher risk of spreading COVID-19, and the consequences of serious illness and/or death.

71.     Accordingly, the entirely reasonable modification being sought in this case is *community masking: protection of selves and others*.  Universal masking was successfully implemented in public school districts across Pennsylvania during the 2020 - 2021 school year.

72.     Universal masking was successfully implemented by the Perkiomen Valley School District in the fall of 2021 and no schools were closed due to COVID-19 infection.

73.     Upon information and belief, universal masking was successfully implemented by Defendants during the 2020 - 2021 school year and the fall of 2021.

---

[18] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/maskingscience-  sars-cov2.html (last visited Sept. 2, 2021).

[19] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[20] https://www.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/  COVID-19-planning-considerations-return-to-in-person-education-in-schools/.

[21] *See* August 31, 2021 PADOH Order.

[22] See September 10, 2021 Directive of the PDE.

74.     Upon information and belief, universal masking would not cause any undue hardship on Defendants and would serve both the interests of Plaintiffs and the public in general by greatly decreasing the risk of COVID-19 infection spreading throughout the Defendant School District.

**B.     A Purely Voluntary Opt-out of Masking Pits Children Against Each Other and Creates Serious Risk of Injury and Death.**

75.     As schools reopened in the fall of 2021, COVID-19 infection numbers among school aged children continued to rise.[23]

76.     By August 1, 2021, Montgomery County's COVID-19 community transmission level was moved from substantial to high.  At that time, the Center for Disease Control, ("CDC"), the Pennsylvania Department of Health, ("PADOH"), and the Montgomery County OPH all recommended that the School District should immediately implement universal masking to protect the children and to limit the spread of COVID-19 within the School District and the community.

77.     On August 9, 2021, the School District implemented a District-Wide Policy of universal masking to protect the children and staff in accordance with the School Board's Policy Manual, the District's Health and Safety Plan and recommendations of the CDC, the PADOH, and the Montgomery County OPH, because COVID-19 transmission rates in Montgomery County had increased from "Moderate" in July to "High" in early August.

78.     On Tuesday, November 2, 2021, the Commonwealth held municipal elections.  That election considered the seats of 4 members of Defendant School board.

79.     As a result of the election there is now a 5-4 split on the Board, which represents a majority of Board Members voting against student safety, science, and Defendant School Board's

---

[23] See August 31, 2021 Order of the PADOH.

prior mask mandates.

80.     The five Board Members include three new Members who ran on a political platform that parents' rights come before public health concerns.

81.      The four Board Members in the minority all support applying science and following the recommendations of a layered approach which includes universal masking made by the CDC, the PADOH and the Montgomery County OPH, the American Academy of Pediatrics, and the Children's Hospital of Philadelphia.

82.     At the Board Meeting on December 13, 2021, the newly constituted Board considered the 2021-2022 Health and Safety Plan, version 11, which would maintain the mandatory masking policy.   By an Amended Motion that passed by a 5-4 margin, the School Board amended the 2021-2022 Health and Safety Plan, version 11, to include all individuals in the Perkiomen Valley School District buildings, which includes all students, staff, and administrators, and rescinded the mandatory masking policy so that masks would be "strongly recommended" but optional as of January 3, 2022.

83.     The vote on December 13, 2021, displayed not only a rejection of legal and medical authority, but a direct disregard for the Board's own policy manual and for the Board's constituency, and creates discrimination under the ADA and RA.

84.     On January 2, 2022, the School Board met again on an emergency basis and voted by a margin of 7-1 to modify the 2021-2022 Health and Safety Plan, version 11, by extending the mandatory masking policy through January 21, 2022 with masking becoming optional as of Monday, January 24, 2022.

85.     Relevant here, the Board, as shown by its vote, now intends to make masks optional

as of January 24, 2022, regardless of local transmission rates of infection from COVID-19, all reliable medical advice, and the discriminatory result under the ADA and RA.

86.     Prior to the December 13, 2021 and the January 2, 2022 votes, each member of the Board was aware and had full and complete knowledge that the COVID-19 virus primarily spreads through respiratory droplets emitted when people cough, sneeze, talk, or even breathe, which are then inhaled by people nearby.

87.     Prior to the December 13, 2021 and the January 2, 2022 votes, each member of the Board was made aware and had full and complete knowledge that COVID-19 was rapidly spreading through Montgomery County and was in the high transmission rate.

88.     Prior to the December 13, 2021 and the January 2, 2022 votes, each member of the Board was made aware and had full and complete knowledge that over 50% of COVID-19 transmissions occur from individuals who are pre-symptomatic or asymptomatic.

89.     Prior to the December 13, 2021 and the January 2, 2022 votes, each member of the Board was made aware and had full and complete knowledge that a layered approach to preventing the spread of COVID-19 is necessary and to be effective wearing masks is required.

90.     Prior to the December 13, 2021 and the January 2, 2022 votes, each member of the Board was made aware and had full and complete knowledge that protecting public health is a compelling governmental interest, which is more important than individual parent's legitimate rights to raise their children as they see fit.

91.     Prior to the December 13, 2021 and the January 2, 2022 votes, each member of the Board was made aware and had full and complete knowledge that individual parent's legitimate rights are limited when confronted by a public health issue.

92.     Defendants' decision to institute a health and safety plan which permits optional masking pits child-against-child, endangering the lives of children with disabilities. Parents of school children with disabilities are forced to hope other parents will require masking, and not opt-out. But when parents permit their children to opt-out of mask wearing, medically fragile children with disabilities and indeed all children are subjected to serious illness or even death as a result of COVID-19 being spread through unmasked breathing, coughing, and sneezing.

93.     In the School District, if optional masking is permitted, the Plaintiffs and those similarly situated will be forced to either attend classes in close proximity to unmasked students, faculty, and staff, or to not attend school in person.

94.     Disabled children being forced to attend school remotely while non-disabled students can attend school in person because the District refuses to make accommodations of universal masking so disabled can attend school in-person is discriminatory in violation of the ADA and RA.

95.     The Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

96.     The Plaintiffs and those similarly situated are entitled to safe, fundamental, and non-discriminatory access to their school buildings with universal masking of teachers, custodians, parent volunteers, and students.

97.     The necessity for such masking is greater now than ever. Yet, the policy of the School District to allow optional masking subjects both healthy children as well as children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

**C.**     **The School District and the Board of Directors Duties and Responsibilities to Provide a Safe and Healthy Environment for the School Children.**

98.     Defendant School Board is charged by the State with the management and supervision of the public elementary and secondary schools in the District.  It derives its authority to govern the local schools directly from the Constitution of the State of Pennsylvania and the rules and regulations of the Pennsylvania Department of Education.  School Board Governance and Operations Legal Status - Board of School Directors, Code 2001, 24 P.S. 301 *et seq*.

99.     The District is governed by a Board of School Directors consisting of nine (9) directors, each of whom is elected on a regional basis for a term of four years.  *See* Board of School Directors, Code 2001, 24 P.S. 301 *et seq*.

100.     "A school shall make specific and adequate provision for protecting the health and safety of students and for safeguarding their physical welfare." 22 Pa. Code, § 51.22 General Safety.

101.     A school district is responsible "to comply with the requirements of Section 504 and its implementing regulations at 34 CFR Part 104 (relating to nondiscrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance) and implements the statutory and regulatory requirements of Section 504." 22 Pa. Code, § 15.1 (a) Purpose.

102.     "Section 504 and its accompanying regulations protect otherwise qualified handicapped students who have physical, mental or health impairments from discrimination because of those impairments." 22 Pa. Code, § 15.1 (b) Purpose.

103.     "The law and its regulations require public educational agencies to ensure that these students have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question."

21

22 Pa. Code, § 15.1 (b) Purpose.

104.    "School districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students as adequately as the needs of nonhandicapped students are met.   These aids, services and accommodations may include, but are not limited to, special transportation, modified equipment, adjustments in the student's roster or the administration of needed medication.  For purposes of the chapter, students protected by Section 504 are defined and identified as protected handicapped students."  22 Pa. Code, § 15.1 (b) Purpose.

105.    "A school district shall provide each protected handicapped student enrolled in the district, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities."  22 Pa. Code, § 15.3. General.

   **D.     Defendants' Actions Constitute a Real and Immediate Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act**.

106.    Defendants currently refuse to provide reasonable accommodations to Plaintiffs and similarly situated students with disabilities by refusing to implement a Health and Safety Plan designed in accordance with current federal, state, and local guidance.

107.    Defendants' Health and Safety Plan now sets forth that mask wearing will be optional while inside the school building and/or on school grounds.

108.    Defendants' refusal to provide reasonable accommodations in the form of an appropriate health and safety plan puts Plaintiffs, and those similarly situated (namely, children with disabilities), at risk of death and debilitating illness from COVID-19.

109.    Defendants' refusal to provide reasonable accommodations for students with disabilities thereby excludes Plaintiffs from access to school buildings and from their in-person education.

110.    Plaintiffs are students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious complications or death from a COVID-19 infection.

111.    Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act") provide broad protections for individuals with disabilities.

112.    Both federal disability-rights laws prohibit outright exclusion, denial of equal access, or unnecessary segregation for students with disabilities in public education.

113.    Both laws also prohibit methods of administration that defeat the fundamental goals of public schools, that is, to provide an education.

114.    Finally, both federal disability rights laws impose affirmative obligations on covered entities to proactively provide reasonable modifications or reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to benefit from their public education.

115.    School districts with students who have disabilities, including underlying medical conditions, that make them more likely to contract and/or become severely ill from a COVID-19 infection, have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed recommended protocols to ensure their safety.

116.    Currently, the CDC's guidance, the PADOH's protocol—as well as those recommended by Montgomery County OPH, the American Academy of Pediatrics and the

American Medical Association— all include universal masking.

## CLASS ALLEGATIONS

117.    Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in the Perkiomen Valley School District (the "Class").

118.    The Class is defined as follows: all current and future K-12 students attending or wishing to attend public school in the Perkiomen Valley School District during the coronavirus pandemic who are unable to obtain a vaccine or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend school in Perkiomen Valley School District who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure  and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

119.    This action has been brought and may properly be maintained as a class action under federal law.  It satisfies the numerosity, commonality, typicality, and adequacy requirements for

maintaining a class action under Fed. R. Civ. P. 23(a).

120.    Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

121.    Numerosity: There are well beyond the necessary number of children in the proposed Class to warrant class certification.  Based on publicly available data, 20.3% of the Perkiomen Valley School District student body – nearly 1,100 students – suffer from disabilities protected by the ADA and RA.

122.    Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether Defendants' policies and practices discriminate against the members of the Class in violation of the ADA and the Rehabilitation Act; and (b) whether the failure of Defendants to enforce its own order requiring masking in all school located in Defendant School District discriminates against the members of the Class in violation of the ADA and the Rehabilitation Act.

123.    Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a whole, including because (a) each Named Plaintiff is currently attending school at a school within Defendant School District and (b) the Named Plaintiffs' and all of the Class members' claims arise from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the same legal theories.

124.    Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class.  The Named Plaintiffs have no interests adverse to the interests of the proposed Class.

125.    Defendants have acted on grounds generally applicable to all proposed Class members.

126.    This action seeks declaratory and injunctive relief.  Injunctive or declaratory relief is proper on a class-wide basis, Plaintiffs therefore seek Class certification under Rule 23(b)(2).

127.    In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

128.    Common questions of fact or law predominate, and class action is superior device for adjudication Rule 23(b)(3).

**CAUSES OF ACTION**
**COUNT I**
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA**

129.    Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

130.    The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.  42 U.S.C. §§ 12101(b)(1) & (2).

131.    Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

132.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

133.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

134.    The School District's optional masking policy is denying the District from providing the children of Plaintiff s and those similarly situated with the protections they need to attend school safely.  By permitting optional masking, the Board has placed the lives of medically vulnerable children, including Plaintiffs' children, who have disabilities under the ADA, in danger.  In doing so, Defendants have violated the regulations and provisions of the ADA:

   a.    Defendants are failing to make a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

   b.    Defendants are excluding Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

   c.    Defendants are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

   d.    Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives  of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

135.    The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §§ 35.130 (b)(3)(I) & (iii).

136.    Defendants do not have the authority to circumvent the ADA and its protections for students with disabilities through School Board votes on policies.

137.    Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

138.    Plaintiffs, in their own capacities and as parents of disabled children, seek to compel Defendants to impose a mandatory mask mandate with limited medical exceptions only where such exceptions are supported by proper medical documentation as this is the only reasonable means to provide the disabled children with "non-discriminatory access to public institutions" under the ADA.

139.    Plaintiffs' children are individuals with disabilities recognized under the Americans with Disabilities Act.

140.    Plaintiffs' children are otherwise qualified to participate in school.

141.    Plaintiffs' children, as disabled students, will be and have been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which they are qualified.

142.    JOHN DOE 1 and JANE DOE 1 live in the School District and bring claims in their own capacity and as parents of CHILD DOE 1, who is a student in the Perkiomen Valley School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of themselves and those similarly situated.

143.    CHILD DOE 1 is 8 years of age and is vaccinated, but not yet eligible to receive a vaccine booster.

144.    Although not yet diagnosed with a learning disability, CHILD DOE 1 has

demonstrated difficulty learning in a virtual school setting and has already fallen behind her peers as a result of prior periods of virtual learning. Consequently, it is essential for her education that she be able to attend school in person.

145.    According to the medical team who advises JANE DOE 1, regarding the medical care and treatment of CHILD DOE 1, universal masking is essential for safe schooling for CHILD DOE 1 because of serious health-related issues. CHILD DOE 1, who is eight years old, is medically vulnerable and requires individualized adult assistance. CHILD DOE 1 is classified as Otherwise Health Impaired, with Medical conditions including asthma and vocal cord dysfunction, which require daily breathing exercises and treatments administered by the school nurse.[24]

146.    CHILD DOE 1 is directly and prominently negatively affected by virtual learning. As such, JOHN DOE 1 and JANE DOE 1 want to keep, and have a right to keep, CHILD DOE 1 educated via in person learning, which requires a layered approach of protection, including universal masking.

147.    JOHN DOE 1 and JANE DOE 1 have legitimate and serious concerns about the District's plan to make masking optional after January 21, 2022. This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 1, as the decision relates to attending school in-person.

148.    CHILD DOE 1's medical team opines that in-person instruction is necessary for CHILD DOE in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

149.    JOHN DOE 1, JANE DOE 1, and CHILD DOE 1 are concerned about the impact of optional masking on CHILD DOE 2's health and safety, as well as on family and friends. Even with

---

[24] *See* Exhibit 2. According to the Special Education Data Report for 2020-2021 school year, disabled students designated as "Other Health Impairment" comprise 20.3% of the 5,319 students in the District, or 1,080 students.

universal masking and vaccinations, CHILD DOE 1's disabilities make it challenging to catch up after having missed school.  Therefore, all preventative measures for a layered approach from the spread of COVID-19,  including universal masking are necessary to help keep CHILD DOE 1 in school in order to providefor CHILD DOE 1's education to be delivered in the Least Restrictive Environment (LRE).

150.    JOHN DOE 2 and JANE DOE 2 live in the School District and bring claims in their own capacity and as parents of CHILD DOE 2, who is a student in the Perkiomen Valley School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of themselves and those similarly situated.

151.    According to the medical team who advises JANE DOE 2, regarding the medical care and treatment of CHILD DOE 2, universal masking is essential for safe schooling for CHILD DOE 2 because of serious health-related issues.  CHILD DOE 2, who is 7 years of age and is vaccinated but not yet eligible to receive a vaccine booster, is classified as Otherwise Health Impaired, with Medical conditions including asthma, chronic bronchitis and pneumonia, and takes immunosuppressant medications.

152.    In addition, CHILD DOE 2 was recently diagnosed with a disability falls that under the category of Emotional Disturbance and had to be withdrawn from school during the 2020-21 school year due to difficulty with virtual learning.  Some of the accommodations that CHILD DOE 2 is expected to receive under a 504 Plan include: learning support in an Emotional Support program, school-based therapy, and social work services.

153.    CHILD DOE 2 is directly and prominently negatively affected by virtual learning. As such, JOHN DOE 2 and JANE DOE 2 want to keep, and have a right to keep, CHILD DOE 2

educated via in person learning, which requires a layered approach of protection, including universal masking.

154.    JOHN DOE 2 and JANE DOE 2 have legitimate and serious concerns about the District's plan to makemasking optional after January 21, 2022.  This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 2, as the decision relates to attending school in-person.

155.    CHILD DOE 2's medical team opines that in-person instruction is necessary for CHILD DOE in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

156.    JOHN DOE 2, JANE DOE 2, and CHILD DOE 2 are concerned about the impact of optional masking on CHILD DOE 2's health and safety, as well as on family and friends.  Even with universal masking and vaccinations, CHILD DOE 2's disabilities make it challenging to catch up after having missed school.  Therefore, all preventative measures for a layered approach from the spread of COVID-19,including universal masking are necessary to help keep CHILD DOE 2 in school in order to providefor CHILD DOE 2's education to be delivered in the Least Restrictive Environment (LRE).

157.    JANE DOE 3 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 3, who is a student in in the Perkiomen Valley School District, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

158.    According to the medical team who advises JANE DOE 3, regarding the medical care and treatment of CHILD DOE 3, universal masking is essential for safe schooling for CHILD DOE 3 because of serious health-related issues.  CHILD DOE 3, who is 10 years of age and is vaccinated

but not yet eligible to receive a vaccine booster, is classified as OtherwiseHealth Impaired, with Medical conditions including asthma that require prescription medications.

159.    JANE DOE 3 has legitimate and serious concerns about the District's plan to make masking optional after January 21, 2022.  This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 3, as the decision relates to attending school in-person.

160.    CHILD DOE 3's medical team opines that in-person instruction is necessary for CHILD DOE in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

161.    As of January 2, 2022, the School District and School Board have refused to implement universal masking beyond January 21, 2022 to protect its 1,080 students who are designated as "Other Health Impairment," are medically fragile, and considered to be disabled under the ADA  like CHILD DOES 1-3.

162.    Upon information and belief, the School District and School Board do not intend to extend its prior universal mask mandate beyond January 21, 2022 to protect its 1,080 students who are designated as "Other Health Impairment," are medically fragile, and considered to be disabled under the ADA  like CHILD DOES 1-3.

165.    CHILD DOES 1-3 all suffer from disabilities under the ADA, detailed above, and are thus protected by the ADA and Section 504 from discrimination based on each's disability.

166.    The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 and should be shielded from discrimination by their school district.

167.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from the public school classrooms by a failure or refusal to provide

a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

## COUNT II

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

168.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

169.    Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended.  *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

170.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the Commonwealth of Pennsylvania.

171.    Defendants, in their official capacities, are the recipients of federal financial assistance.

172.    The School Board's votes on December 13, 2021 and January 2, 2022 are denying the District the ability to provide the Plaintiffs' children, and others similarly situated with the accommodations they need to attend school safely.

173.    Plaintiffs' children are individuals with a disability recognized under the Section 504 of the Rehabilitation Act.

174.    Plaintiffs' children are otherwise qualified to participate in school.

33

175.    A public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties, are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

176.    Although a state is not required to maximize the potential of every handicapped child, it must supply an education that provides "significant learning" and "meaningful benefit" to the child.

177.    Section 504 of the Rehabilitation Act provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. "  29 U.S.C. § 794 (a).

178.    Defendants have violated the regulations and provisions of Section 504, as follows:

   a.    Defendants are excluding Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

   b.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. §104.4(b)(4); and

   c.    Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by school districts, in violation of 34 C.F.R. § 104.4(b)(4).

179.    Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through School Board votes.

180.    Excluding children from public school classrooms because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

181.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

182.    Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

183.    Plaintiffs seek a temporary restraining order enjoining the School Board from enforcing the votes of December 13, 2021 and January 2, 2022 permitting optional masking.

184.    Plaintiffs seek a preliminary injunction enjoining the Defendants during the course of this litigation from enforcing the votes of December 13, 2021 and January 2, 2022 permitting optional masking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A.      Assume jurisdiction of this action;

B.       Certify this Petition as a class action;

C.       Declare that the School Board's vote of December 13, 2021 permitting optional masking violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

D.       Issue a temporary restraining order enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting optional masking in the School District;

E.       Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting parents optional masking;

F.       Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G.       Grant such other and further relief as may be just, equitable and proper.

Date: January 21, 2022                                                          Respectfully submitted,
                                                                               De Gisi Law Group, LLC

                                                                               */s/ Carmen A. De Gisi*
                                                                               Carmen A. De Gisi
                                                                               PA ID No. 208989
                                                                               De GISI LAW GROUP, LLC
                                                                               462 Germantown Pike, Suite 11
                                                                               Lafayette Hill, PA 19444
                                                                               (610) 897-8721
                                                                               cdegisilaw@gmail.com
                                                                               *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served by e-mail on this 21st day of January 2022, addressed to the below parties and counsel:

PVSD SOLICITOR
Brian E. Subers, Esquire
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001
bsubers@foxrothschild.com

MEMBER SAYLOR
jsaylor@pvsd.org

MEMBER EVANS-BROCKETT
sevansbrockett@pvsd.org

MEMBER WHITE
lrwhite@pvsd.org

MEMBER MARES
kmares@pvsd.org

MEMBER FOUNTAIN
dfountain@pvsd.org

MEMBER CAMPLI
tcampli@pvsd.org

MEMBER KEENAN
rkeenan@pvsd.org

MEMBER DORR
mdorr@pvsd.org

MEMBER KOLAR
rkolar@pvsd.org

PVSD SUPERINTENDENT
brussell@pvsd.org

Respectfully submitted,
De Gisi Law Group, LLC

*/s/ Carmen A. De Gisi*
Carmen A. De Gisi
PA ID No. 208989
De GISI LAW GROUP, LLC
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
(610) 897-8721
cdegisilaw@gmail.com
*Counsel for Plaintiffs*